

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

BDM:TRP                                  *271 Cadman Plaza East*
F. #20016R01412                          *Brooklyn, New York 11201*

May 26, 2020

By ECF

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

>          Re:     *United States v. Ryan Young*;
>                  PacNet Services Ltd., Chexx (Americas) Inc. and Accu-Rate Corp.,
>                  Third-Party Petitioners
>                  Criminal Docket No. 18-46 (JMA)

Dear Judge Azrack:

The government respectfully writes in response to the Verified Petition for Ancillary Proceedings to Adjudicate Interest Pursuant to 21 U.S.C. § 853(n) (hereinafter, the "Petition") filed by PacNet Services, Ltd. ("PacNet"), Chexx (Americas) Inc. and Accu-Rate Corp. (hereinafter, the "Petitioners"). (ECF Dkt. No. 17).  For the reasons stated below, the government moves for a stay of the forfeiture ancillary proceedings in the above-referenced case, until such time that there is a disposition in a related criminal case, <u>United States v. Roseanne Day</u>, <u>et al</u>., Criminal Docket No. 19-CR-155, which is currently pending in the District of Nevada (the "Day Criminal Case").

A stay of the forfeiture ancillary proceeding, including the adjudication of Petitioners' Petition, is warranted because commencing the forfeiture ancillary proceedings at the present time would adversely affect the ability of the government to conduct the criminal investigation and prosecution of the related Day Criminal Case.  Further, a stay of the ancillary proceedings is appropriate to conserve judicial resources, to promote the efficient and final resolution of the forfeiture matters and to avoid duplicative litigation.

I.      <u>Factual and Procedural History</u>

This matter stems from an investigation by the United States Postal Inspection Service ("USPIS") into an international network of mass mailing fraud schemes that

collectively have defrauded millions of victims, particularly elderly and otherwise vulnerable victims, across the United States out of hundreds of millions of dollars each year. These fraudulent mail campaigns involve tens of thousands of solicitations sent to consumers each year that promise large lottery and sweepstakes prizes or clairvoyant services. The solicitations contain several misrepresentations and typically state that the recipient has won a large cash prize to be disbursed once the recipient sends in a small payment or "processing fee." Victims who send in payments generally receive nothing of value in return, only an increased number of similar solicitations.

USPIS's investigation revealed that PacNet has a 20-year history of processing payments for numerous fraudulent mass-mail campaigns. PacNet is an international payment processor and money services business based in Vancouver, British Columbia, Canada, with subsidiaries and related companies around the world. PacNet processed payments sent in response to fraudulent mass-mailed solicitations by collecting cash payments and converting massive numbers of victim checks and credit card payments into cash, and wiring the proceeds to its clients, the orchestrators of various mass-mail fraud schemes. PacNet's role in processing victim payments for the schemes provided a valuable money laundering service to its clients, in that PacNet acted as the intermediary between the orchestrators of the fraud schemes and the banking system, which, as a result, obviated the need for the orchestrators to interact with the victims' banks directly, or deposit victim payments into their own bank accounts, thereby distancing themselves from law enforcement detection.

USPIS's investigation further revealed that since at least 2012, defendants Ryan Young and Ercan Barka, and their business entity, the Barka Young Group, have engaged in predatory mail fraud schemes that target victims throughout the United States and abroad through the use of fraudulent solicitations that falsely inform recipients that they have won a sweepstakes or lottery. The investigation also revealed that PacNet processed victim payments on behalf of the Barka Young Group's mail fraud schemes since at least 2012.

A.     The Seizure Warrants

On or about September 20, 2016, a seizure warrant was issued by the Honorable Cheryl L. Pollak, United States Magistrate Judge for the Eastern District of New York, authorizing the seizure of approximately $963,205.14 from PacNet's primary operating account at BMO Harris Bank, finding probable cause to believe that the funds constitute or are derived from proceeds traceable to mail fraud, in violation of Title 18, United States Code, Section 1341 or a conspiracy to commit such offense, and money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, and are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1).

On or about September 21, 2017, the Honorable Vera M. Scanlon, United States Magistrate Judge, issued warrants authorizing the seizure of the following bank accounts controlled by PacNet: (i) approximately $1,503,251.39 from BMO Harris Bank, N.A. account number 3722949 held in the name of PacNet Services, Ltd.; (ii)  approximately $765,611.07

from BMO Harris Bank, N.A. account number 20333306 held in the name of Chexx (Americas) Inc.; and (iii) approximately $362,222.68 from Avidia Bank account number 33595257 held in the Name of PacNet Services, Ltd., finding probable cause to believe that the funds constitute or are derived from proceeds traceable to mail fraud, in violation of Title 18, United States Code, Section 1341 or a conspiracy to commit such offense, and money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, and are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1).

USPIS' investigation revealed that the funds that PacNet transferred into the Court's registry from its bank accounts at Union Bank (the "Source Union Bank Accounts") constituted were derived from proceeds traceable to mail fraud schemes for which PacNet processed payments. On or about December 12, 2017, the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, issued a warrant authorizing the seizure of the funds on deposit in the Court's registry, approximately $2,673,279.31, finding probable cause to believe that the funds represented: (i) property traceable to proceeds of mail fraud, in violation of 18 U.S.C. § 1341, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); and (ii) property involved in money laundering in violation of 18 U.S.C. § 1956 (relating to the laundering of monetary instruments) and 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), and are therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 981(b) and 21 U.S.C. § 853(f).

B.    The Criminal Cases

On or about January 25, 2018, Ercan Barka pled guilty to conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, and is currently awaiting sentence. See United States v. Ercan Barka, 18-CR-31 (JMA)

On or about February 13, 2018, defendant Ryan Young pled guilty to conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, in the above-referenced case, and is currently awaiting sentence. On or about September 11, 2019, the Court entered a Preliminary Order of Forfeiture against Young (ECF Dkt. No. 15), ordering the entry of a forfeiture money judgment in the amount of $1,500,000.00, and the forfeiture of all right, title and interest in the following property:

(a)    Seventeen Thousand Seven Hundred Twenty-Six Dollars and Twenty-Five Cents ($17,726.25), more or less, seized from Sussex Bank account number ****3394, held in the name of Parasol Media, LLC, and all proceeds traceable thereto;

(b)     Eight Thousand One Hundred Ten Dollars and Fifty Cents ($8,110.50), more or less, seized from Sussex Bank account number ****3402, held in the name of Pelorus Management, Inc., and all proceeds traceable thereto;

(c)     Five Thousand Two Hundred Five Dollars and Seventy-five Cents ($5,205.75), more or less, seized from Sussex Bank account number ****3426, held in the name of Ryan Young and Rosanna Young, and all proceeds traceable thereto;

(d)     Eighty-Five Thousand Three Hundred Nine Dollars and Fourteen Cents ($85,309.14), more or less, seized from Sussex Bank account number ******3490, held in the name of The Millhouse Trust, and all proceeds traceable thereto;

(e)     Forty-Eight Thousand Nine Hundred Fifty-Three Dollars and Eighty Cents ($48,953.80), more or less, seized from TD Bank Account Number ******8845, held in the name of Int'l Data Sciences LLC, and all proceeds traceable thereto;

(f)     Seventy-Three Thousand Three Hundred Thirty-Two Dollars and Ninety-Three Cents ($73,332.93), more or less, seized from TD Bank Account Number ******8853, held in the name of Electus Holdings, LLC, and all proceeds traceable thereto;

(g)     Nine Hundred Sixty-Three Thousand Two Hundred Five Dollars and Fourteen Cents ($963,205.14), more or less, seized from BMO Harris Bank Account Number ***0703, held in the name of PacNet Services Ltd., seized by law enforcement on or about September 20, 2016, and all proceeds traceable thereto;

(h)     One Million Five Hundred Three Thousand Two Hundred Fifty-One Dollars and Thirty-Nine Cents ($1,503,251.39), more or less, seized from BMO Harris Bank Account Number ***2949, held in the name of PacNet Services Ltd., seized by law enforcement on or about September 22, 2017, and all proceeds traceable thereto;

(i)     Seven Hundred Sixty-Five Thousand Six Hundred Eleven Dollars and Seven Cents ($765,611.07), more or less, seized from BMO Harris Bank Account Number ***3306, held in the name of Chexx (America) Inc., seized by law

4

enforcement on or about September 22, 2017, and all proceeds traceable thereto;

(j)      Three Hundred Sixty-Two Thousand Two Hundred Twenty-Two Dollars and Sixty-Eight Cents ($362,222.68), more or less, seized from Avidia Bank Account Number ****5257, held in the name of PacNet Services Ltd., seized by law enforcement on or about September 22, 2017, and all proceeds traceable thereto; and

(k)      Approximately two million six hundred seventy-one thousand three hundred thirty-five dollars and fifty-nine cents ($2,671,335.59), seized from the Court Registry under United States District Court case docket number 17-CV-6027 (JMA), and all proceeds traceable thereto (the "Interpleader Funds");

(items (g) through (k), collectively, the "Subject Property").

As stated above, the Subject Property was seized by the government pursuant to duly-authorized seizure warrants issued by United States Magistrate Judges, and is the property at issue in the Petition. The government subsequently initiated judicial criminal forfeiture actions against the Subject Property by filing Bills of Particulars in the Young case (ECF Dkt. Nos. 4 and 11) and in United States v. Ercan Barka, 18-CR-31 (JMA) (See ECF Dkt. No.33). The Subject Property is currently being held by the United States Marshals Service, which is consistent with the lawful practice in this District for funds seized pending a forfeiture adjudication.

On or about June 19, 2019, a grand jury empaneled in the District of Nevada returned an indictment in United States v. Roseanne Day, et al., Criminal Docket No. 19-CR-155, charging PacNet principals Roseanne Day, Robert Paul Davis and others with conspiracies to commit wire fraud, mail fraud and money laundering, in violation of 18 U.S.C. 1349 and 1956(h). See Day Criminal Case Indictment ("Indictment") attached hereto as Exhibit A. The Day Criminal Case is currently pending in the District of Nevada.

II.    The Forfeiture Ancillary Proceeding

The post-trial ancillary proceeding is where third parties have an opportunity to establish their legal right, title or interest in criminally forfeited property. See 21 U.S.C. § 853(n); Fed R. Crim. P. 32.2(c). In order to trigger the commencement of a third-party ancillary proceeding, the government must first publish notice of the forfeiture order and send notice to all potential claimants. Fed. R. Crim. P. 32.2(b)(6)(A). The notice must describe the forfeited property, state the time when a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition. Fed. R. Crim. P. 32.2(b)(6)(B).

The ancillary proceeding closely resembles a civil action and, as such, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure.  See, e.g., Pacheco v. United States, 393 F.3d 348, 352 (2d Cir. 2004) (commenting that civil procedures aid efficient resolution of claims in ancillary proceeding). In this regard, the Court may entertain motions to dismiss a petition for lack of standing, for failure to state a claim, or for any other lawful reason. Fed. R. Crim. P. 32.2(c)(1)(A).  In the event that a claim survives a motion to dismiss and, after conclusion of a period for the parties to conduct any discovery that is necessary or desirable to resolve factual issues, a party may move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Crim. P. 32.2(c)(1)(B).

In order to advance a claim in an ancillary proceeding, a third-party claimant must first establish a "legal interest" in a particular asset identified in an order of forfeiture, within the meaning of 21 U.S.C. § 853(n)(2).  United States v. Ribadeniera, 105 F.3d 833, 834-35 (2d Cir. 1997); see also United States v. Timley, 507 F.3d 1125, 1129-30 (8th Cir. 2007) ("[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture.") (citation omitted); United States v. Salti, 579 F.3d 656, 667 n. 11 (6th Cir. 2009) (holding that standing must be supported in same way as any other matter on which claimant bears burden of proof).

Only after a claimant makes a threshold showing of standing under Section 853(n)(2) may a court reach the merits of a claim, at which point the court must determine whether the claimant has met his burden of showing that his legal interest is a "superior interest" as compared to the government's interest at the time of the acts giving rise to forfeiture. Timley, 507 F.3d at 1130, n. 2 (distinguishing between "legal interest" required for claimant to establish standing under Section 853(n)(2), and "superior legal interest" required for claimant to ultimately prevail on merits under Section 853(n)(6)); Pacheco, 393 F.3d at 351 ("burden [falls] ultimately on the petitioner to prove her claim by a preponderance of the evidence"); United States v. Porchay, 533 F.3d 704, 709 (8th Cir. 2008) ("To prevail in a § 853(n) claim, [claimant] had to demonstrate by a preponderance of the evidence that she had a superior right, title, or interest in the seized property . . . ."); United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005) ("[T]he petitioner bears the burden of proving his right, title, or interest under Section 853(n)(6).").

In order to show a superior interest, a claimant must either demonstrate under Section 853(n)(6)(A) that he had priority of ownership over the forfeited property at the time of the offense, or must demonstrate under Section 853(n)(6)(B) that he subsequently acquired the property as a bona fide purchaser for value without cause to believe the property was subject to forfeiture.  Ribadeniera, 105 F.3d at 834-35.  In addition, under the relation back doctrine, the government's exclusive interest in forfeited property "vests in the United States upon the commission of the act giving rise to forfeiture . . . ." 21 U.S.C. § 853(c); Nava, 404 F.3d at 1124 ("The title to forfeited property vests in the United States at the time the defendant commits the unlawful acts . . . .").

6

In sum, the ancillary proceeding is essentially a quiet title proceeding in which the Court must determine whether forfeited property actually belongs to the third party that has asserted a claim to it.  See, e.g., United States v. McHan, 345 F.3d 262, 275-76 (4th Cir. 2003) (holding that petitioner in ancillary proceeding, which is akin to equitable quiet title proceeding, has no Seventh Amendment right to jury trial).  If the forfeited property belongs to the third party, then the property must be stricken from the order of forfeiture; however, if the property does not belong to the third party, then the preliminary order of forfeiture becomes final and the United States becomes the exclusive titleholder to the property.  See 21 U.S.C. §§ 853(n)(6) and (7); United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005) (holding that if no third party files a meritorious claim to assets included in order of forfeiture, then United States obtains clear title to property pursuant to 21 U.S.C. § 853(n)(7)).

III.    The Criminal Forfeiture Ancillary Proceedings Should be Stayed

The government moves for a stay of the adjudication of the instant Petition and the forfeiture ancillary proceedings with respect to the Subject Property in order to: (i) prevent an adverse affect on the ability of the government to conduct the criminal investigation and prosecution of the related Day Criminal Case; (ii) conserve judicial resources; (iii) promote the efficient and final resolution of the forfeiture matters; and (iv) avoid duplicative litigation.

A.    Legal Framework

Criminal forfeiture is governed by Rule 32.2 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 982.  While there is no provision under the criminal forfeiture statutes for obtaining a stay of forfeiture proceedings, the civil forfeiture statute contains such a provision, which should guide the Court's determination on whether a stay is appropriate in a criminal forfeiture proceeding.  See United States v. Becker, No. 10-40077-02-JAR, 2011 WL 836743, *3-4 (D. Kan. Mar. 4, 2011) (recognizing that the civil statute [18 U.S.C. § 981(g)] guides the Court's determination as to whether a stay is appropriate in criminal case in which party or witness is target of related criminal prosecution).

Title 18, United States Code, Section § 981(g) provides, in pertinent part:

(1) Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

(2) Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that—

(A) the claimant is the subject of a related criminal investigation or case;

(B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and

(C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

Further, the statute defines a "related case" as "an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made." See 18 U.S.C. 981(g)(4). "In determining whether a criminal case or investigation is 'related' to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors." Id.

In cases involving multiple co-conspirators, the interests of justice are best served by conducting the ancillary proceeding after all defendants have been tried. See United States v. House, 2016 WL 4154847 (N.D. Cal. Aug. 5, 2016) (staying ancillary proceeding where petitioner was necessary witness and defendant in related criminal case in order to avoid infringement of defendant's Fifth Amendment right against self-incrimination); United States v. Becker, 2011 WL 836743, at *3-4 (D. Kan. Mar. 4, 2011) (stay of ancillary proceeding is appropriate where one defendant is convicted and co-defendant proceeds to trial in order to avoid Fifth Amendment problems). Requiring third-party petitioners to wait until after the conclusion of the criminal case to pursue claims in an ancillary proceeding has also been found to comport with due process requirements. United States v. Zorrilla-Echevarria, 671 F.3d 1, 11-12 (1st Cir. 2011) (rejecting third party's claim that delay in commencing ancillary proceeding violated right to due process).

It is clear that the laws governing the ancillary proceeding contemplate an orderly process for the adjudication of third-party interests after resolution of the underlying criminal cases. Indeed, pursuant to 21 U.S.C. § 853(k)(1), no party claiming an interest in property subject to forfeiture may intervene in a trial or appeal of a criminal case involving the forfeiture of such property. To allow the ancillary hearing to be conducted at this stage of the proceeding would be disruptive to the criminal trial process, and tantamount to the unlawful intervention by third-party claimants that is disfavored. See, e.g., United States v. Holy Land Found. for Relief & Dev., 493 F.3d 469, 476 n. 10, 477 (5th Cir. 2007) ("[I]t would be a significant burden on the Government to have to defend the forfeiture order from attack by a third party during the course of an ongoing criminal prosecution . . .").

Moreover, Section 853 contemplates finality following the conclusion of the ancillary proceeding. See 21 U.S.C. 853(n)(7). ("Following the court's disposition of all petitions filed in the ancillary proceeding . . . , the United States shall have clear title to property that is the subject of the order of forfeiture." See 21 U.S.C. § 853(n)(7)).

8

As the Second Circuit has held, "to …ensure that the adjudication of entitlements to forfeited property is consolidated in a single proceeding, the filing of an indictment or information stays any civil actions claiming a portion of the proceeds of the alleged offense." Federal Insurance Co. v. United States, 882 F.3d at 370; see also United States v. Corpus, 491 F.3d 205, 208 n.1 (5th Cir. 2007); United States v. Kennedy, 201 F.3d 1324, 1326 n.6 (11th Cir. 2000).

B.   Proceeding with the Ancillary Forfeiture Proceeding at this Time Would Be Premature

First, a stay of the forfeiture ancillary proceedings is warranted because proceeding with the ancillary proceeding at the present time would adversely affect the government's investigation and prosecution in the Day Criminal Case, which is the same issue that Section 981(g) was designed to address.  Here, a party or witness to the ancillary proceeding, i.e., the Petitioners' principals, are also the targets of a related criminal prosecution. The Day Criminal Case charges the Petitioners' principals Roseanne Day, Robert Paul Davis and others with conspiracies to commit wire fraud, mail fraud and money laundering, in violation of 18 U.S.C. 1349 and 1956(h), and other related charges, during the time period in or about and between March 1994 and September 2016.  The Indictment alleges that Roseanne Day was a part-owner, founder and managing director of PacNet, and that Robert Paul Davis was a part owner of PacNet.  The Petition confirms that Petitioners Chexx (Americas) Inc. and Accu-Rate Corp. are subsidiaries of PacNet. See Petition, p. 6.

Further, the conduct that forms the basis for the forfeiture sought by the government is substantially the same conduct charged in the Day Criminal Case.  If the ancillary proceeding was to proceed, the government would engage in civil discovery that would require the government to preview its evidence, submit to document demands and subject its witnesses to depositions and cross examination prior to the criminal prosecution. In addition, previewing the government's evidence could allow current and future targets of the criminal investigation to avoid prosecution or destroy or move evidence, and could jeopardize the availability or willingness of witnesses and informants to cooperate with the government. See United States v. Property at 297 Hawley Street, 727 F.Supp. 90, 91 (W.D.N.Y. 1990) (finding stay necessary to protect criminal case from potentially broad discovery demands).

As part of the civil discovery process, the government likewise would seek discovery from the Day Criminal Case defendants, including their testimony at depositions, that would likely implicate the defendants' Fifth Amendment rights, which makes moving forward with the ancillary proceeding at the present time impractical.

Second, a stay of the ancillary forfeiture proceedings would be in the interest of judicial economy by allowing the parties to resolve the forfeiture of the Subject Property following a full resolution of the criminal charges that underlay the forfeiture action. Notably, if the defendants in the Day Criminal Case are convicted, forfeiture would be

mandatory as part of their sentence on conspiracy to commit mail fraud and conspiracy to commit money laundering charges, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C). Thus, a disposition in the Day Criminal Case would likely include a resolution of the forfeiture sought here, which would obviate the need for further litigation on the instant Petition.

Third, the government has yet to commence the ancillary proceeding by sending notice of the Preliminary Order to all known potential third-party claimants, as required by Rule 32.2(b)(6). Thus, an adjudication of the Petition is premature. See United States v. Marion, 562 F.3d 1330, 1338 (11th Cir. 2009) (recognizing that because authority to commence ancillary proceeding rests with government, claimants' petitions were premature) (citing Advisory Committee Notes to Fed. R. Crim. P. 32.2).

Further, if the Court were to proceed with the ancillary proceeding on Petitioners' Petition at this time, ahead of all other potential claimants, there would be no finality to the proceedings since the ownership rights of other potential claimants would have yet to be adjudicated. Allowing the government to commence the ancillary proceeding by serving notice on all known potential claimants to the Subject Property would ensure that all other potential claimants have the opportunity to assert an interest in the Subject Property. Thus, the Court's interests in effective administration of justice and fairness to all potential third parties are best served by addressing all claimants' potential interests in the Subject Property in one ancillary proceeding following the conclusion of the Day Criminal Case. See 21 U.S.C. § 853(n)(4) ("The court may consolidate the hearing on the petition with a hearing on any other petition . . . .").

In the alternative, should the Court be inclined to proceed with the ancillary proceeding on Petitioners' claim, the government respectfully requests: (a) that the Court grant sufficient time for the government to complete service of notice proceedings to all known potential claimants, which would include parties in the Interpleader Case; and (b) for the parties, present and future, to confer and submit a briefing schedule for briefs and hearings, if necessary.

Accordingly, the ancillary hearing should be adjourned until after the Day Criminal Case has been resolved, and after such time as the government takes appropriate steps to commence the ancillary proceeding and serve notice on all potential claimants.

III.     The Relief Sought in the Petition Should Be Denied

The Petitioners move the Court to: (i) schedule a hearing pursuant to 21 U.S.C. § 853(a) and Rule 32.2 of the Federal Rules of Criminal Procedure; (ii) amend the Preliminary Order of Forfeiture entered against Ryan Young in the above-referenced matter to remove the Subject Property; (iii) order that the Interpleader Funds be moved to the Court's registry in Case No. 17-CV-6027 (JMA) and that any remaining funds be returned to

the Petitioners; and (iv) order attorney's fees and expenses relating to the ancillary petition pursuant to federal law, including 28 U.S.C. § 2412.

The relief sought by Petitioners should be denied at this time. The government relies on its prior submissions filed in <u>PacNet Services, Ltd. v. Office of Foreign Assets Control of the United States Department of the Treasury</u>, et al., 17-CV-6027 (JMA) (hereinafter, the "Interpleader Case"), which respond to most of the arguments raised in the instant Petition. <u>See</u> Response in Opposition to PacNet Services Ltd.'s Cross Motion to Compel (Interpleader Case, ECF Dkt. No. 139-8) and Sur-Reply in Further Opposition to PacNet Services Ltd.'s Cross Motion to Compel (Interpleader Case, ECF Dkt. No. 143). The government's arguments in opposition to the Petition are briefly summarized below.

A.    <u>Petitioners' Request for A Hearing is Premature</u>

As discussed above, a hearing to adjudicate the forfeitability of the Subject Property is premature at this time. First, there is a pending related criminal investigation and prosecution that would be adversely affected should a hearing and the related discovery process proceed at this time. Second, the government has not yet sent notice to all known potential parties in order to commence the ancillary proceedings. Thus, a stay of the hearing at this time is appropriate in order to conserve judicial resources, promote the efficient and final resolution of the forfeiture matters and avoid duplicative litigation.

B.    <u>An Amendment of the Young Preliminary Order of Forfeiture is Unwarranted</u>

The Petitioners seek to amend the Young Preliminary Order of Forfeiture by striking the Subject Property from the Order on the grounds, in sum, that certain of the Subject Property is owned by the Petitioners, not by Ryan Young. The Petitioners' motion to strike is contrary to asset forfeiture law and procedure, and should therefore be denied.

It is well settled that property derived from a criminal conspiracy may be forfeited from any co-conspirator, and that the property need not belong to the defendant. <u>See</u> <u>De Almeida v. United States,</u> 459 F.3d 377, 381 (2d Cir. 2006) (holding that criminal forfeiture is not limited to property owned by the defendant; "it reaches any property that is involved in the offense" <u>United States v. Watts</u>, 477 Fed. Appx. 816, 817-18 (2d Cir. 2012) (following <u>De Almeida</u>; holding that property may be forfeited based on its nexus to the offense, regardless of ownership. <u>But</u> <u>see</u> <u>Pacheco v. Serendensky</u>, 393 F.3d 348, 355 (2d Cir. 2004) (holding that government was only entitled to forfeit defendant's interest in property held jointly with spouse because forfeiture order was expressly limited to defendant's interest).

Once the Court has ordered the forfeiture of property, the proper remedy for a third party to challenge the forfeiture is to file a claim. <u>See</u> 21 U.S.C. § 853(n). <u>See</u> <u>also</u> <u>United States v. Watts,</u> 477 Fed. Appx. 816, 817-18 (2d Cir. 2012) (holding that when property is forfeited in co-defendant's case, yet-to-be-tried co-defendant has right to file claim in the ancillary proceeding); <u>United States v. Davenport</u>, 668 F.3d 1316, 1321-1323 (11th

Cir. 2012) (holding that former co-defendant's only avenue of relief from forfeiture order was to file claim in ancillary proceeding; status as former defendant did not confer standing to otherwise contest forfeiture order ).

Thus, a co-defendant or claimant wishing to establish an interest in forfeited property must do so as a third party in an ancillary forfeiture proceeding. See Davenport at 1321 (holding that a co-defendant in a criminal case is properly viewed as third-party with regard to another defendant's forfeiture of property); United States v. Porchay, 533 F.3d 704, 709 (8th Cir. 2008) (affirming district court's decision to treat acquitted defendant as third-party petitioner under Section 853(n)); United States v. Becker, No. 10-40077-02-JAR, 2011 WL 93762, at *1 (D. Kan. Jan. 11, 2011) (declining defendant's request to conduct hearing on release of funds for payment of attorney's fees in circumvention of ancillary proceeding where funds were identified in order of forfeiture entered against co-defendant).

As the above-cited cases demonstrate, the law provides for an ancillary proceeding as the exclusive forum in which third parties may assert an ownership interest in property subject to forfeiture. See 21 U.S.C. § 853(n) (authorizing filing of third-party petitions asserting legal interests in property subject to forfeiture); Fed. R. Crim. P. 32.2(c) (setting forth procedures governing conduct of ancillary proceeding); Federal Insurance Co. v. United States, 882 F.3d 348, 370 (2d Cir. 2018)  (the forfeiture statute [21 U.S.C. § 853(k)] provides that a third party claiming an interest in property subject to forfeiture may adjudicate that interest against the government only as provided in [21 U.S.C.] § 853(n)).

In the present case, Young has pled guilty to participating in the same fraud conspiracy that serves as the basis for the government's forfeiture of the Subject Property. Thus, the Subject Property was properly included in the Young Preliminary Order of Forfeiture as proceeds of, or property involved in the fraud conspiracy.  Nevertheless, the Subject Property will not be finally forfeited to the United States until all third party claims have been adjudicated and a final order of forfeiture has been entered. See Fed. R. Crim. P. 32.2 (c).

Thus, amendment of the Young Preliminary Order of Forfeiture is unwarranted and unnecessary at the present time, and the claims asserted in the Petition should be adjudicated in the forfeiture ancillary proceedings in the instant criminal case against Ryan Young following the conclusion of the Day Criminal Case.

C.    The Interpleader Funds Should Remain in the Custody of the United States Marshals Service Pending a Forfeiture Adjudication in the Ancillary Proceeding in this Case

The Petitioners seek to have the Interpleader Funds transferred from the United States Marshals Service to the Court's registry under the Interpleader Case, and to have any remaining funds returned to the Petitioners.  The Petitioners' request should be denied.

As background, on September 19, 2017, OFAC and the PacNet Group, which included PacNet and other subsidiaries, entered into an agreement (hereinafter, the

"OFAC Agreement"), whereby, *inter alia*, OFAC would remove the PacNet Group and other individuals from the Specially Designated Nationals and Blocked Persons List, and the PacNet Group would submit funds identified as owed to certain former clients that were believed to involve proceeds of fraud or money laundering into *either* an escrow account *or* an account with the Clerk of Court as part of an interpleader action. See OFAC Agreement, Interpleader Case at ECF Dkt. No. 139-6.  No other governmental agency, including the U.S. Attorney's Office for the Eastern District of New York, was a party to the Agreement, and OFAC made no representations or commitments on behalf of any other governmental agency.  Under the OFAC Agreement, the PacNet Group was required to transfer funds owed to its former clients identified as involved in fraud schemes, including Ryan Young and Erkan Barka[1], into either an escrow account **or** an interpleader account.  At PacNet Group's election, PacNet Group commenced the Interpleader Case and transferred the Interpleader Funds into the Court's registry, as opposed to depositing the aforementioned funds into an escrow account.

Contrary to Petitioners' assertions, the OFAC Agreement specifically contemplated that the funds transferred by PacNet Group would be subject to recovery in a forfeiture action. See OFAC Agreement, p. 4 (ECF Dkt. No. 139-6).  The government subsequently took steps to bring the Interpleader Funds under the jurisdiction of the criminal forfeiture cases pending against co-conspirators Ryan Young and Ercan Barka, who were both PacNet former clients.

On or about December 12, 2017, upon application by the United States Postal Inspection Service, the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, issued a warrant for the funds on deposit in the Court's registry in the Interpleader Case, finding probable cause to believe that the funds represented: (i) property traceable to proceeds of mail fraud, in violation of 18 U.S.C. § 1341, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); and (ii) property involved in money laundering in violation of 18 U.S.C. § 1956 (relating to the laundering of monetary instruments) and 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), 981(a)(1)(C), 981(b) and 21 U.S.C. § 853(f). In addition, the government obtained an Order issued by the Honorable authorizing the seizure of the Interpleader Funds and its transfer to the United States Marshals service pending further disposition by the Court.

Questions of ownership with respect to the Interpleader Funds seized from the Court Registry are most appropriately resolved in a criminal forfeiture ancillary proceeding,

---

[1] The Complaint filed by PacNet in the Interpleader Case alleges that the Interpleader Funds include approximately $834,854.97 owed by PacNet to the Barka Young Group in connection with PacNet's payment processing services rendered. See Interpleader Case, Annex A to Complaint (ECF Dkt. No. 5-1).

which provides a well-established forum for the adjudication of third-party claims.  See 21 U.S.C. § 853(n) (providing for the filing of third-party petitions asserting legal interests in property subject to forfeiture); Fed. R. Crim. P. 32.2(c) (setting forth procedures governing conduct of ancillary proceeding); Federal Insurance Co. v. United States at 370 (holding that [21 U.S.C. § 853(k)] provides that a third party claiming an interest in property subject to forfeiture may assert that interest only as provided in Section 853(n)).

 In addition to serving the interests of judicial economy and finality as explained above, a forfeiture adjudication of the Subject Property in the criminal forfeiture ancillary proceeding will afford the opportunity for remission and restoration of forfeited property to victims of the charged fraud offenses.  See 21 U.S.C. § 853(i)(1) (authorizing Attorney General to grant petitions for remission of forfeited property).  The forfeiture ancillary proceeding provides a venue for third parties to recover property that belongs to them, and for forfeited property to be used to compensate victims of crime, pursuant to 28 C.F.R. Part 9. It is well-settled that, among the many goals of the forfeiture statutes, are punishment of the wrongdoer, victim compensation, the deterrence of future offenses and the disruption of criminal enterprises. Kaley v. United States, 134 S.Ct 1090 (2014).  In this regard, courts have recognized that a victim's hope of getting paid may rest on the government's ability to collect a defendant's assets under the forfeiture law. See United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014); 28 C.F.R. § 9 (setting forth procedures for victims to apply to have forfeited funds used to compensate their losses).

 Thus, it is the criminal forfeiture ancillary proceeding, as opposed to the Interpleader Case, that provides the appropriate forum to adjudicate any claims to the Subject Property.

 D. <u>An Award for Attorney's Fees and Expenses to Petitioners is Unwarranted</u>

 Petitioners have not provided a sufficient legal basis for an award of attorney's fees and expenses related to the criminal forfeiture ancillary proceeding in this case.  The provisions in Title 28, United States Code, Section 2412 cited by Petitioners are only applicable to civil actions and do not apply in this criminal case.

V. <u>Conclusion</u>

 For the foregoing reasons, the government requests that the Court stay the adjudication of the Petitioner's Petition and the criminal forfeiture ancillary proceedings relating to the Subject Property, pending resolution of the Day Criminal Case..

Thank you for Your Honor's consideration of this submission.

Very truly yours,

RICHARD P. DONOGHUE
United States Attorney

By:    /s  *Tanisha Payne*
Tanisha R. Payne
Assistant U.S. Attorney
(718) 254-6358
Tanisha.Payne@usdoj.gov