

IfrahLaw
Hands-on Counsel, Gloves-off Litigation
ifrahlaw.com

(202) 524-4140
1717 Pennsylvania Ave, N.W., Suite 650, Washington, D.C. 20006

June 9, 2020

TRANSMITTED VIA ECF
The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

     Re:    *United States v. Young*, No. 18-cr-48 (E.D.N.Y.)
              Petition for Ancillary Proceedings Pursuant to 21 U.S.C. § 853(n)

Dear Judge Azrack:

     We represent PacNet Services Ltd., Chexx (Americas) Inc., and Accu-Rate Corp. (collectively, "Petitioners") in connection with the Verified Petition for Ancillary Proceedings to Adjudicate Interest Pursuant to 21 U.S.C. § 853(n) ("Petition") filed in the above-captioned matter. (Dkt. No. 17.) We write the Court to submit this brief reply in support of Petitioners' Motion to Grant Verified Petition to Adjudicate Interest Pursuant to 21 U.S.C. § 853(n) As Unopposed ("Motion" or "Mot.").[1]

I.     <u>Introduction</u>

     On February 13, 2018, Defendant Ryan Young ("Young") waived his right to an indictment and pled guilty to a single count of conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349. (Dkt. No. 7.) The criminal information to which Young pled guilty contained a general "Criminal Forfeiture Allegation" alleging that 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) "require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense." (Dkt. No. 6 at 5.) The information did not identify the

---

[1] In Petitioners' forthcoming response to the Government's recently-filed Motion to Stay (Dkt. No. 19), Petitioners will address why a stay is in appropriate in addition to other relevant matters raised in the Government's Motion to Stay. Further, counsel for Petitioners also represents PacNet in *PacNet Services Ltd. v. United States Department of the Treasury Office of Foreign Assets Control, et al.*, No. 17-cv-6027 (JMA) (LB) (E.D.N.Y.) ("OFAC Interpleader"), which is also pending before this Court. Counsel for Petitioners is in receipt of the Court's May 31, 2020 Order requesting briefing from PacNet on several questions raised by the Court. (No. 17-cv-6027, Dkt. No. 168.) Although Petitioners' filings in this matter—related to the criminal forfeiture's in Ryan Young's criminal matter—touch on issues also relevant to the questions raised to PacNet by the Court in the OFAC Interpleader, PacNet will respond in full to the questions raised by the Court in that matter in a filing in that matter on or before July 1, 2020 (the date on which the Court ordered PacNet to respond).



specific property the Government sought to forfeit, nor did the public docket or the plea colloquy include any other indication of the specific property the Government intended to forfeit.

After Young pled guilty, the Government filed two bills of particulars that identified the specific property the Government sought to forfeit.[2] (Dkt Nos. 4 and 11.) Those bills identified twelve distinct pools of money, many of which were not the property of Young and did not constitute, and were not derived from, "proceeds obtained directly or indirectly as a result of" the offense to which Young pled guilty. The transcript of Young's February 13, 2018 Change of Plea hearing before this Court confirms there was no mention of these pools of money nor any facts proffered or presented to support their forfeiture by Young to the U.S. Government.

Relevant to these proceedings, the identified pools of money included over $6.2 million in funds held in Petitioners' bank accounts at BMO Harris Bank and Avidia Bank and funds which had been transferred from Petitioners' accounts at Union Bank to this Court's registry pursuant to an October 18, 2017 Order of this Court ("PacNet Accounts"). In violation of the terms of a September 19, 2017 Settlement Agreement the Government reached with PacNet, the Government seized the funds in this Court's registry. Pursuant to that settlement, the Government directed that PacNet, as a disinterested stakeholder, would interplead funds contractually owed to certain former clients. The Government further issued a federal license authorizing PacNet through its counsel to transfer the funds to the Court's registry. Furthermore, this Court on October 18, 2017 pursuant to an unopposed motion determined that the facts warranted the establishment of an Interpleader Fund and approved PacNet to transfer the funds. PacNet complied with its September 19, 2017 Agreement and the Government's directive and license by instituting the interpleader action in this Court. *See PacNet Services Ltd. v. Office of Foreign Assets Control of the United States Dep't of Treasury, et al.*, No. 17-cv-6027 (E.D.N.Y.) ("OFAC Interpleader").

More than a year and a half later and without notice, the Government in September 2019 moved to forfeit the property identified in the bills of particulars, including the PacNet Accounts. Dkt. 14. The Government's motion was three sentences long and requested that

---

[2] It is an improper use of the bill of particulars vehicle to file a bill of particulars after the criminal defendant already has pled guilty in an attempt to initiate judicial forfeiture proceedings against unrelated third parties and their property. *See United States v. Murray*, 297 F.2d 812, 819 (2d Cir. 1962) ("The function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise[.]"); *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) ("The[] purpose [of bills of particulars] is to inform a defendant of charges with sufficient precision to allow preparation of a defense, to avoid unfair surprise, and to preclude double jeopardy. A bill of particulars is a statement of what the government will or will not claim in its prosecution.") (citing *Murray*) (additional citations omitted).

2



the Court "so order" the proposed Preliminary Order attached to the motion, in which Young consented to a $1.5 million forfeiture money judgment and to forfeit certain property as set forth in the Order. *Id.* [3] Because the Government did not advise the Court of the legal deficiencies in its requests for forfeiture of the PacNet accounts, the Court granted the motion on the following day without providing PacNet with any notice or opportunity to be heard. (Dkt. No. 15.)  The Court made no revisions to the proposed Preliminary Order submitted by the Government, nor did it make any independent findings. *Id.* Critically, the Order made no findings either that: (1) Young had *any* interest in the PacNet Accounts; or (2) that any funds in those accounts constituted proceeds traceable to the criminal activity to which Young pled guilty. *See* Preliminary Order. Nor was there any factual predicate elsewhere in the record to support such findings.

Petitioners filed their Petition in this matter on February 28, 2020. (Dkt. No. 17.) The Government failed to respond to the Petition within the appropriate timeframe, and Petitioners therefore filed a motion to grant their Petition as unopposed on May 19, 2020. (Dkt. No. 18.)  Following that filing by Petitioners, the Government belatedly filed a Motion to Stay the resolution of the Petition. (Dkt. No. 19.) Petitioners' response to that Motion is due on June 10, 2020, and that forthcoming filing will discuss why a stay is wholly improper. Not only is a stay inappropriate, but for the reasons discussed in Petitioners' Motion and herein, because the Government's time to respond to the Petition passed well before any responsive filing by the Government, it is appropriate for the Court to enter an order at this time amending the Preliminary Order as requested in the Petition.

II.   Argument

A.   The Government Fails To Address The Controlling Decision *United States v. Honeycutt*, Which Merits Judgment In Petitioners' Favor Without Further Proceedings

PacNet briefly discusses the "elephant in the room," which is the fact that in both its Motion to Stay (Dkt. No. 19) and its Response in Opposition to Petitioners' Motion (Dkt. No. 21, "Response" or "Opp."), the Government has failed to account for controlling precedent from *United States v. Honeycutt*, 137 S. Ct. 1626, 1634 (2017). Indeed, this controlling Supreme Court authority that warrants resolution of the Petition in favor of Petitioners, even if the Government had submitted a timely response to the Petition (which it did not).

---

[3] By seeking to forfeit $6.2 million in PacNet funds to which Young has no access, interest, or control, the Government seeks to take a third party's property in over *four times the amount* of the forfeiture money judgment against the criminal defendant himself.



ifrahlaw.com

In *Honeycutt*, a unanimous Supreme Court emphasized that criminal forfeiture "is limited to property the defendant himself actually acquired as the result of the crime." *Id.* at 1635. The holding in *Honeycutt* applies with full force to criminal forfeitures under 18 U.S.C. § 981(a)(1)(C), like the proposed forfeiture of the PacNet Accounts in this case. The Government has conceded before the U.S. Supreme Court, that "there is no 'distinguishing 18 U.S.C. 981 from 21 U.S.C. 853 for purposes of joint and several liability.'" *Peithman v. United States*, 140 S. Ct. 340 (2019) (Sotomayor J., dissenting from denial of certiorari) (quoting Brief in Opposition of the Solicitor General at 6). The Court of Appeals for the Second Circuit and other courts have recognized that the Supreme Court's ruling in *Honeycutt* applies to forfeitures under other federal forfeiture statutes, including 18 U.S.C. § 981 and § 982.[4]

The contemplated forfeiture of the funds listed in paragraphs (c) through (g) of the Preliminary Order is barred as a matter of law by *Honeycutt* because the Government has not shown that Young "himself actually acquired" the property in the Preliminary Order "as the result of the crime." Nor can the Government make that showing, with respect to Petitioners' funds identified in paragraphs (c) through (g) of the Preliminary Order, because those funds were the property of Petitioners, and Defendant Young never "acquired" them, whether as the result of a crime or otherwise. As discussed in the Petition, the Government seized all of the Forfeited Funds directly from Petitioners, and Defendant Young never acquired or controlled any of the funds at issue. (Petition at 18-20.) Because there is no possibility that the Government can make any showing to the contrary, the Petition can be resolved as a matter of law and without the need for discovery.

In short, Petitioners' property cannot be forfeited in this criminal matter as part of defendant Young's sentencing under a theory of joint and several liability. Not only has the Government failed to prove, or even plead, that Petitioners were somehow the co-conspirator

---

[4] *United States v. Fiumano*, 721 F. App'x 45, 51–52 (2d Cir. 2018) (summary order) (vacating forfeiture order seeking to impose joint and several liability on the defendant pursuant to 18 U.S.C. § 981(a)(1)(C)); *United States v. Gil-Guerrero*, 759 F. App'x 12, 18 (2d Cir. 2018) (same); *United States v. Gjeli*, 867 F.3d 418, 427-28 (3d Cir. 2017) (finding that 18 U.S.C. § 981(a)(1)(C) is "substantially the same" as the statute in question in *Honeycutt* and holding that Honeycutt applies to criminal forfeitures under § 981(a)(1)(C)); *United States v. Brown*, 714 F. App'x 117, 118 (3d Cir. 2018) (finding that "*Honeycutt* applies with equal force to § 982(a)" and, accordingly, "the imposition of joint and several liability in the forfeiture money judgment was an error which requires remand"); *United States v. Carlyle*, 712 F. App'x 862, 864-65 (11th Cir. 2017) (per curiam) ("Although the forfeiture statute at issue in *Honeycutt*, 21 U.S.C. § 853, is not the same as the forfeiture statute at issue here, 18 U.S.C. § 981(a)(1)(C), the two statutes are largely the same in terms of their pertinent language, and so it appears that the Supreme Court's decision would apply to the statute at issue in the present case.").



of Young,[5] but even if it had, *Honeycutt* bars joint and several forfeiture liability even in the case of co-conspirators, as were present in that case. As *Honeycutt* explains, a Court in ordering criminal or *in personam* forfeiture may not order the forfeiture of "untainted property" and "is limited to property the defendant himself actually acquired as the result of the crime." 137 S. Ct. at 1632, 1635; *see also, e.g., United States v. Fiumano*, 721 F. App'x 45, 51–52 (2d Cir. 2018) (summary order) (vacating forfeiture order pursuant to 18 U.S.C. § 981(a)(1)(C) imposing joint and several liability on defendant).

In support of its argument that it is "well settled that property derived from a criminal conspiracy may be forfeited from any co-conspirator, and that the property need not belong to the defendant," the Government relies exclusively upon 2006 and 2012 cases which were decided prior to, and overruled by, *Honeycutt.* (*See* Dkt. No. 19 at 11 (citing *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006) and *United States v. Watts*, 477 F. App'x 816,817–18 (2d Cir. 2012)).) *Honeycutt*, which Petitioners referenced in their Petition and the Government does not even attempt to address, expressly held that federal law "requires the defendant to forfeit only his interest in the [criminal] enterprise" and that "Congress did not authorize the Government to confiscate substitute property from other defendants or coconspirators." 137 S. Ct. at 1632–33. Accordingly, "forfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." *Id.* at 1635. The Government does not address this controlling precedent at all. Indeed, the Government's attempt to forfeit property that does not belong to Defendant Young also runs afoul of the Department of Justice's own policy. *See* Dep't of Justice Asset Forfeiture Policy Manual at 83 ("In any plea

---

[5] In its Motion to Stay, in passing, the Government suggests that PacNet is "co-conspirators" with both Defendant Young and Ercan Barka because they "were both PacNet clients." (Dkt. No. 19 at 13.) Other than this self-serving, unsupported statement, the Government makes no effort to establish that Petitioners are in any way co-conspirators with Young and Barka. Further, far from conspiring together with Young and Barka, or, in the words of the Government, "act[ing] as the intermediary between the orchestrators of the fraud schemes and the banking system," beginning in at least August 2012, PacNet submitted Suspicious Transaction Reports ("STRs") and other reports with the Canadian government revealing the conduct of Ercan Barka or companies allegedly operated or controlled by him and co-conspirators (such as Defendant Young). (*See* Petition at 16.)  STRs are the Canadian equivalent of a Suspicious Activity Reports ("SARs") filed with the U.S. Treasury Department's FinCEN. PacNet filed STRs in relation to the conduct of Barka with FINTRAC, a Canadian federal government regulator. Such disclosure of information to the government would necessarily defeat a claim of criminal conspiracy. *See, e.g., United States v. Steele*, 685 F.2d 793, 801 (3d Cir. 1982) ("as a matter of law" an entity could not be a member of a conspiracy where it disclosed the alleged conspiracy to law enforcement officials). Thus, although the Government states that "[i]n cases involving multiple co-conspirators, the interests of justice are best served by conducting the ancillary proceeding after all defendants have been tried," the relevant defendants here are solely Young and Barka, whose cases have both been resolved via guilty plea.



agreement, a defendant may only consent to the forfeiture of his or her interest in the property.").

Remarkably, even to the present date, the Government's many filings in connection with this action have never cited *Honeycutt* let alone outlined why it does not resolve the pending Petition as a matter of law. In light of *Honeycutt*, because there is no discovery that could demonstrate anything other than the fact that the property at issue belongs to Petitioners and was never acquired by Defendant Young, *Honeycutt* mandates that a ruling in Petitioners' favor as a matter of law.

### B. The Government Was Required to Respond To The Petition Within 60 Days, And It Failed To

In its Response in Opposition to Petitioners' Motion (Dkt. No. 21, "Response" or "Opp."), the substance of the Government's argument appears in two paragraphs in which it relies upon the Eleventh Circuit's opinion in *United States v. Marion*, 562 F.3d 1330 (11th Cir. 2009), in support of the argument that there is no requirement under Fed. R. Crim. P. 32.2 that the Government submit any kind of response (nor sets a deadline for a response) to an ancillary petition filed under 21 U.S.C. § 853(n)  to challenge a forfeiture order. (Opp. at 6-7.)

Although the Eleventh Circuit ruled in *Marion* as the Government summarizes on the limited issue concerning the text of Rule 32.2,[6] the Government's Response fully ignores Second Circuit authority Petitioners presented in their Motion.  Namely, as discussed at length in Petitioners' Motion, in *United States v. Bradley*, the Second Circuit—in a decision following similar decisions issued by the Third and Ninth Circuits—held that ancillary petitions filed under 21 U.S.C. § 853(n) are governed by timelines applicable to civil lawsuits. 882 F.3d 390, 393 (2d Cir. 2018) (citing *United States v. Alcaraz–Garcia*, 79 F.3d 769, 772 n.4 (9th Cir. 1996); *United States v. Lavin*, 942 F.2d 177, 181-82 (3d Cir. 1991); *see also United States v. Moser*, 586 F.3d 1089, 1093 (8th Cir. 2009) (stating that an ancillary proceeding under 21 U.S.C. § 853(n) "carries many of the hallmarks of a civil proceeding, and it bears few if any hallmarks of a criminal proceeding").

Not only did the Government fail to address *Bradley* in its Response, in the Government's own Motion to Stay, the Government, in reliance on Second Circuit authority, stated that "[t]he ancillary proceeding closely resembles a civil action and, as such, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure." (Dkt. No. 19 at 6 (citing *Pacheco v. United States*, 393 F.3d 348, 352 (2d Cir. 2004)).) Thus, far

---

[6] As will be discussed in Petitioners' forthcoming opposition to the Government's Motion to Stay, the Government's references to *Marion* in its separate May 27, 2020 Motion to Stay this forfeiture proceeding do not accurately summarize the rulings in that case.



from arguing that civil rules do not apply here, in its Motion to Stay, the Government has essentially conceded that the civil rules are operative. Therefore, as outlined in Petitioners' Motion, the Government had 60 days to file an answer, motion to dismiss, or other responsive pleading. Because the Government failed to do so and, instead, filed its Motion to Stay approximately 89 days after the Petition was filed—over a month after a responsive pleading or motion to dismiss was due—it is appropriate for the Court to grant the relief sought in the Petition as unopposed.

III.   <u>Conclusion</u>

For the foregoing reasons and for those set forth in Petitioners' Motion, the Court should grant Petitioners' Motion.

Sincerely,

<u>/s/ A. Jeff Ifrah</u>
A. Jeff Ifrah
George R. Calhoun, V (*pro hac vice* to be filed)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006-2004
(202) 524-4160 – Tel.
(202) 524-4141 – Fax
jeff@ifrahlaw.com
george@ifrahlaw.com

*Attorneys for Petitioners*

CC: Counsel of Record (by ECF)